REVISED, April 3, 1998

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-60018

TEXAS DEPARTMENT OF COMMERCE; TEXAS WORKFORCE COMMISSION,

Petitioners,

VERSUS

UNITED STATES DEPARTMENT OF LABOR,

Respondent.

Petition for Review of an Order
of the United States Department of Labor

March 31, 1998

Before WISDOM, HIGGINBOTHAM, AND STEWART, Circuit Judges.

WISDOM, Senior Circuit Judge:

The Texas Department of Commerce (Texas Commerce) petitions this Court to review the final decision of the United States Department of Labor (DOL) disallowing $617,171 in expenditures claimed under the Job Training Partnership Act (JTPA)[1] for the grant years of 1989, 1990, and 1991. We find that the DOL failed to establish a *prima facie* case that Texas Commerce spent JTPA funds unlawfully. We reverse the DOL's decision.

I.

Congress provides federal funding to state governments under the JTPA to finance job

---

[1] 29 U.S.C. §§ 1501 - 1781.

training and placement programs for economically disadvantaged individuals. From 1989 through 1992, the years in question in this suit, Texas Commerce was the designated recipient of these funds for the state of Texas.[2] Texas Commerce allocated its funds among several service delivery areas including the one administered by the Middle Rio Grande Development Council. The DOL challenged the Middle Rio Grande Development Council's expenditures in this case.

The administrator of the JTPA funds for a given service delivery area must allocate its expenditures among three categories: training, administration, and participant support.[3] The administrator may not spend more than 15% of its allocated funds in any given fiscal year for administrative costs.[4] It may not spend more than 30% of its funds on the combined total of administrative expenses and participant support without receiving a waiver from the state.[5] Each state is primarily responsible for establishing guidelines to ensure that expenditures are charged to the proper cost category.[6] The state's authority to establish guidelines is prescribed to the extent that the DOL has issued its own regulations.[7]

During the years in question, administrators of service delivery areas were authorized to spend JTPA funds on "employment generating activities to increase job opportunities for eligible individuals in the area".[8] The DOL regulations prohibited charging expenditures for employment generating

---

[2]    Effective March 1, 1996, the Texas Workforce Commission replaced the Texas Department of Commerce as the recipient of JTPA funds. Tex. Lab. Code Ann. § 302.021(8) (West 1996).

[3]    29 U.S.C. 1518; 20 C.F.R. § 629.38(a) (1989-1991).

[4]    29 U.S.C. § 1518 (a). This limitation cannot be waived. 20 C.F.R. § 629.39(a)(2) (1989-1991)..

[5]    29 U.S.C. § 1518 (b)(1) & (c)(2)(B).

[6]    29 U.S.C. § 1574 (a)(1).

[7]    *See* 20 C.F.R. § 627.1 (1989-1991).

[8]    29 U.S.C. § 1604(19) *repealed* Pub. L. 102-367 (Sept. 7, 1992). Now, service delivery areas are not authorized to spend funds on employment generating activities. 20 C.F.R. §§ 627.225 & 627.435(e)(8) (1997).

activities to the training cost category,[9] but those regulations did not explicitly state whether these costs were classified as either administrative or participant support expenditures. The Middle Rio Grande Development Council charged its expenditures for employment generating activities to participant support. By doing this, the Middle Rio Grande Development Council was able to spend JTPA funds on employment generating activities without encountering the 15% limit on administrative expenditures.[10]

The DOL's Office of the Regional Inspector General audited the Middle Rio Grande Development Council's JTPA programs. The inspector general's office sent a copy of the audit report to the DOL's grant officer who disallowed $822,257 in expenditures charged to the participant support cost category for employment generating activities. The grant officer maintained that these expenditures could be charged only to administration and were, therefore, subject to the 15% limit.

Texas Commerce appealed the grant officer's decision to an Administrative Law Judge (ALJ). The Middle Rio Grande Development Council intervened in the appeal. The ALJ reversed the grant officer's decision in its entirety. The ALJ found that the DOL failed to establish a *prima facie* case that the Middle Rio Grande Development Council violated the JTPA and that the Middle Rio Grande Development Council classified its expenditures properly.

The DOL appealed to an Administrative Review Board which reversed the ALJ's decision and disallowed $628,115 in expenditures.. The Board found that the DOL met its burden of producing evidence of a *prima facie* violation of the JTPA and that Texas Commerce failed to meet its burden of persuasion to show that it classified the expenditures properly. The Board found that the burden of persuasion on Texas Commerce required it to trace expenditures for employment generating activities to specific, identifiable individuals before those expenditures could be charged

_____

[9] 20 C.F.R. § 629.38( e)(5) (1989-1991).

[10] The combined limitation for administrative and participant support expenditures was no obstacle to the Middle Rio Grande Development Council because that limit was waived.

3

to participant support. Texas Commerce petitions this Court to review the Board's decision under 29 U.S.C. § 1578(a). Only $617,171 remains in issue.[11]

## II.

Our review of the final decision of the DOL disallowing expenditures under the JTPA is limited.[12] "If the language of the JTPA is plain, we must enforce the unambiguously expressed intent of Congress. If the statute is ambiguous, however, we must defer to *reasonable interpretations* of the statute by the [DOL]."[13] The DOL's factual findings shall be conclusive if supported by substantial evidence.[14]

At the ALJ's hearing, the DOL bore the burden of production to prepare and file a report in support of the grant officer's decision to disallow expenditures.[15] As the party seeking to overturn the grant officer's decision, Texas Commerce bore the burden of persuasion.[16] The key issue before us is to determine the nature and extent of these respective burdens.

Texas Commerce was required to maintain records adequate to show that JTPA funds were spent lawfully.[17] These records enable the DOL to audit these JTPA programs to determine which expenditures should be allowed.[18] Texas Commerce does not bear the initial burden of justifying its expenditures before the ALJ, however. That burden rests upon the DOL which must produce

---

[11]     Texas has not petitioned for review of the DOL's second finding that disallowed $10,944 in expenditures.

[12]     *Louisiana v. Dept. of Labor*, 108 F.3d 614, 617 (5th Cir. 1997).

[13]     *Id*.

[14]     29 U.S.C. § 1578 (a)(3).

[15]     20 C.F.R. § 636.10 (g) (1997); 20 C.F.R. § 629.58 (I) (1989-1991).

[16]     20 C.F.R. § 636.10 (g) (1997); 20 C.F.R. § 629.58 (I) (1989-1991).

[17]     *See Louisiana v. Dept. of Labor*, 108 F.3d 614, 617 (5th Cir. 1997); 29 U.S.C. § 1575 (a)(1).

[18]     *See* 29 U.S.C. § 1574.

4

evidence sufficient to establish a *prima facie* case.[19] This requires evidence sufficient for a reasonable person to conclude that JTPA funds were spent unlawfully.[20] If the records of Texas Comerce were inadequate to show that JTPA funds were spent lawfully, the DOL could meet its burden by establishing the inadequacy of the records.[21] The DOL maintains that these records were inadequate because they did not trace expenditures for employment generating activities to specific, identifiable individuals. We find that the DOL and the Board which accepted the DOL's argument are in error.

Participant support costs are those costs that directly benefit JTPA-eligible individuals by assisting them in their participation in JTPA training programs.[22] These costs may include "transportation, health care, special services and materials for the handicapped, child care, meals, temporary shelter, financial counseling, and *other reasonable expenses required for participation in the training program*".[23] Although these expenses are all ones that benefit individuals, there is no support in the statute or the regulations that each expenditure must be traced to a specific, identified individual. The DOL's interpretation is not a reasonable one to which we must defer.[24]

The ALJ found that the DOL failed to establish a *prima facie* case that JTPA funds were

---

[19]     *See OWCP Director v. Greenwich Collieries*, 129 L.Ed 2d 221, 228-9 (1994); *Maine v. Dept. of Labor*, 669 F.2d 827, 830 (1st Cir. 1982).

[20]     McCormick, 2 <u>Evidence</u> 433 (4th ed. 1992).

[21]     *See Louisiana v. Dept. of Labor*, 108 F.3d 614, 617-18 (5th Cir. 1997); *Montgomery County v. Dept. of Labor*, 757 F.2d 1510, 1513 (4th Cir. 1985). The DOL argues that, as a matter of policy, the burden of showing the adequacy of the records should fall upon the state as the party in possession of the records. We disagree. The DOL is already under an obligation to audit the state's JTPA records. If the records prove to be inadequate to show that JTPA funds are spent lawfully, the DOL can obtain copies of the inadequate records or could offer testimony before the ALJ that, after a reasonable investigation, no adequate records could be found. The DOL did neither in this case.

[22]     29 U.S.C. §§ 1503 (24), 1518(b)(2)(A). In this case, we address a particular subset of participant support characterized as "supportive services". In addition to this category, participant support includes work experience expenditures and need-based payments to pay for food and housing while a participant undergoes training. 29 U.S.C. § 1519(b)(2)(A); 20 C.F.R. § 629.21(a) (1989-1991).

[23]     29 U.S.C. § 1503(24) (emphasis added).

[24]     *See Louisiana v. Dept. of Labor*, 108 F.3d 614, 617 (5th Cir. 1997).

5

spent unlawfully. We agree. The DOL auditors conceded that the challenged employment generating activities expenditures directly benefited JTPA-eligible individuals. The DOL did not review the Texas Commerce records to determine whether these legitimate employment generating activity expenditures were ones that could be charged to participant support. Instead, the DOL relied upon faulty legal interpretations to justify the denials.[25] This is not evidence from which a reasonable person could conclude that JTPA funds were spent unlawfully. The DOL did not meet its burden.

We REVERSE the decision of the Administrative Review Board and RENDER judgment in accord with the ALJ's decision.

---

[25] At first, the DOL denied reimbursement for the expenditures, arguing that employment generating activities could never be charged to participant support. Later, the DOL admitted that employment generating activities could be charged to participant support. The DOL denied reimbursement, however, arguing that Texas failed to trace the expenditures to specific individuals.